## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLAN EARL LUCAS, JR.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  13-00143 (TFH)** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

### MEMORANDUM OPINION

Allan Earl Lucas, Jr. (the "plaintiff") commenced this federal lawsuit against the District of Columbia (the "defendant") to recover money damages for lost earnings and retirement benefits stemming from the Metropolitan Police Department's alleged failure -- nearly 43 years ago -- to treat his induction into the United States Marine Corps as a military furlough and to reemploy him upon his discharge from military service.  After careful consideration, and for the reasons that follow, the Court concludes that the plaintiff's lawsuit must be dismissed without prejudice because all claims asserted in the First Amended Complaint are preempted by the Comprehensive Merit Personnel Act ("CMPA") and the plaintiff has not exhausted his administrative remedies pursuant to that Act.

### BACKGROUND

The plaintiff alleges that he was employed by the Metropolitan Police Department for about seven months from 1972 to 1973 before resigning to serve in the United States Marine Corps during the Vietnam Conflict.  First Am. Compl. ¶¶ 4-6 [ECF No. 34].  According to the plaintiff, when he resigned from the Metropolitan Police Department, he received no separation

counseling or other information about his employment rights, and he was never advised about his eligibility for a military furlough or the effect his resignation might have on future reemployment rights or benefits.  First Am. Compl. ¶¶ 6, 7, 32.  The plaintiff served in the Marine Corps until he was honorably discharged with a disability in 1978.  First Am. Compl. ¶ 9.

After being discharged, the plaintiff immediately wrote to the Metropolitan Police Department to request reinstatement to his prior position but his request was denied after he was advised that the Department had no record of his employment.  First Am. Compl. ¶¶ 10, 11.  In 1982, however, the plaintiff was again employed by the Metropolitan Police Department, albeit the plaintiff contends that he was hired on a probationary status at a lower salary than he would have qualified for if his prior Department and military service had been properly credited.  First Am. Compl. ¶ 13.  In addition, the plaintiff claims that his retirement benefits were improperly administered under the District retirement plan rather than the federal retirement plan he was entitled to if (1) he had been granted a military furlough when he first left the Metropolitan Police Department and (2) he had been reinstated to a position within the Department when his military service concluded.  First Am. Compl. ¶ 13, 21.

The plaintiff remained employed by the Metropolitan Police Department until 1993, when he began working as a Corrections Officer at the District of Columbia Department of Corrections.  First Am. Compl. ¶¶ 14, 16.  For reasons that are not explained in the plaintiff's First Amended Complaint, the plaintiff was reinstated to the Federal Civil Service Law Enforcement retirement system in 1994.  First Am. Compl. ¶ 15.  The plaintiff ultimately retired from the Department of Corrections in 2005 and he claims that was when he discovered that his prior employment with the Metropolitan Police Department had been "recorded" by the

Department of Human Resources and Office of Personnel Management, contrary to what the Metropolitan Police Department told him in 1978.  First Am. Compl. ¶ 16.  "As a result, his OPM total service computation sheet appeared to have been 'corrected' to reflect his initial employment with [the Metropolitan Police Department] . . . ."  First Am. Compl. ¶ 16.

The Department of Human Resources approved the plaintiff's retirement benefits in 2005 and the plaintiff asserts that "[i]t was at this time that his total service computation sheet was changed to reflect the action of a military furlough . . . ."  First Am. Compl. ¶ 17.  Consequently, by May of 2005, it appeared to the plaintiff that the errors in the computation of his retirement benefits had been corrected.  First Am. Compl. ¶ 18.  The plaintiff claims, however, that his retirement benefits were calculated using his "accrued federal service of 29 years, 8 months, 2 days and a monthly annuity of $2,281.46," which "did not reflect the higher salary and title he was entitled to had the original mistake not been made in 1978[.]"  First Am. Compl. ¶ 19.  The plaintiff further complains that "interim years of employment that should have been included under the federal system had he been properly restored in 1978" were not accounted for in the calculation of his retirement benefits, *id.*, so he did not receive credit for "his actual 33 years of service," First Am. Compl. ¶ 20.  The plaintiff also was subjected to four probationary periods of employment that he asserts "unnecessarily decreased the salary [he] was earning at the time of his retirement in 2005."  First Am. Compl. ¶ 20; *see also id.* ¶ 21.

On February 3, 2007, the plaintiff was notified by an official at the Office of Personnel Management[1] that 22 years of his "previously credited" federal service would not be eligible for

---

[1]     Although the First Amended Complaint refers to the "federal Office of Personnel," it is clear from other paragraphs in the complaint that the plaintiff is referring to the Office of Personnel Management.  *See*, *e.g.*, First Am. Compl. ¶¶ 23-24 (discussing "letters from OPM").

annuity payments unless the plaintiff paid $55,419 into the federal Civil Service Retirement System. First Am. Compl. ¶ 22. According to the plaintiff, "[h]e was also told that his military service time should have been re-deposited and paid for before retiring, and that at 65-years of age, it would be deducted." First Am. Compl. ¶ 22. The plaintiff asserts that "[t]his was [his] first indication that an error had possibly occurred when calculating his federal benefits." First Am. Compl. ¶ 22. Nearly a week after receiving the letter from the Office of Personnel Management, the plaintiff received another letter stating that he owed $5,955.87 as a result of overpayments that were made to him after his retirement in 2005. First Am. Compl. ¶ 23. The Office of Personnel Management informed the plaintiff that $165.00 would be withheld from his monthly annuity until the overpayment was recouped. First Am. Compl. ¶ 24. In response to the letters, the plaintiff requested that an investigation be conducted. First Am. Compl. ¶ 24. The plaintiff claims, however, that "[h]e received no further contact from OPM, except to state that his retirement was under law enforcement from the DC government." First Am. Compl. ¶ 24.

The plaintiff subsequently contacted the Office of Personnel Management and the "D.C. Retirement Information Office"[2] about 52 times from 2007 to 2010 before finally receiving a "response"[3] from the District of Columbia Police and Firefighter Retirement Relief Board that

_____

[2]     It is unclear what agency the plaintiff is referring to when he cites the "D.C. Retirement Information Office." First Am. Compl. ¶ 27. The Office of Personnel Management has a "Retirement Information Center," which is identified on its website, *see* Contact Retirement: Retirement Information Center, http://www.opm.gov/Blogs/Retire (last visited Aug. 15, 2015). There does not, however, appear to be a District agency or office titled the "Retirement Information Office," although the District does have a "District of Columbia Retirement Board," which has a Member Services Center, *see* District of Columbia Retirement Board, http://dcrb.dc.gov (last visited Aug. 15, 2015).

[3]     The plaintiff does not state the form of the response, i.e., whether by telephone call, letter or otherwise.

acknowledged his "grievance."  First Am. Compl. ¶ 27.  On August 18, 2010, the plaintiff met

with a Chief Personnel Specialist for the District's Office of Personnel, a Human Resource

Specialist for the Metropolitan Police Department, and a District attorney who represented the

Police and Firemen's Retirement Relief Board.  First Am. Compl. ¶ 28.  According to the

plaintiff, during that meeting the officials "acknowledged" that the plaintiff had not received

proper separation counseling from the Metropolitan Police Department, that he left the

Department to serve in the military and was eligible for a military furlough, and that he should

have been reemployed by the Department upon his discharge from the military.[4]  First Am.

Compl. ¶ 28.  Despite these acknowledgments, the plaintiff alleges that, in October 2012, the

"defendants . . . refused to give [the plaintiff] his proper benefits."  First Am. Compl. ¶ 29.

## PROCEDURAL POSTURE

The plaintiff originally filed a Complaint against the District of Columbia, the District of

Columbia Metropolitan Police Department, the District of Columbia Police and Firefighter

Retirement Relief Board, and the District of Columbia Department of Human Resources.

Complaint 2 [ECF No. 1].  The Complaint set forth the following five causes of action:

(1) breach of contract based on alleged violations of Chapter 8, Subparts 12.2 and 13.1, of a

District Personnel Manual that the plaintiff asserts applied to him when he was employed by the

MPD from 1972 to 1973, Complaint ¶¶ 33, 34, 35; (2) negligence for failure to maintain records

---

[4]     The plaintiff does not identify who made the asserted "acknowledgements" or whether
the acknowledgements were made by all three officials at the meeting.  In a subsequent
paragraph of the First Amended Complaint, however, the plaintiff suggests that it was the official
from the Police and Firemen's Retirement Board who made the acknowledgments.  *See* First
Am. Compl. ¶ 29 (referring to "the District of Columbia Police and Firefighter Retirement Relief
Board's acknowledgment that [the plaintiff] was denied his rights").

of the plaintiff's employment, properly calculate the plaintiff's retirement benefits, and correct calculation errors, Complaint ¶¶ 40, 41, 42; (3) entitlement to back pay and attorney's fees pursuant to the Back Pay Act, 5 U.S.C. § 5596, based on the plaintiff's allegation that he "was the recipient of an unjustified and unwarranted personnel action [that] has resulted in the withdrawal and reduction of his pay, allowances, and benefits," Complaint ¶¶ 45, 46; (4) entitlement to compensation for loss of wages and benefits pursuant to the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.*, for the District's failure to reemploy the plaintiff after he was honorably discharged from the military in 1978, Complaint ¶¶ 49, 50, 51, 52, 53; and (5) entitlement to liquidated damages pursuant to the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4323(d), on the ground that the District's alleged acts or omissions involved a willful deprivation of the plaintiff's "reemployment rights," Complaint ¶¶ 55, 56, 57.

The District of Columbia, the District of Columbia Metropolitan Police Department, the District of Columbia Police and Firefighter Retirement Relief Board, and the District of Columbia Department of Human Resources moved to dismiss the Complaint, which the plaintiff opposed.  The Court held a public hearing at which it entertained arguments, dismissed the Complaint against the District of Columbia Metropolitan Police Department, the District of Columbia Police and Firefighter Retirement Relief Board, and the District of Columbia Department of Human Resources, dismissed the causes of action invoking the Uniformed Services Employment and Reemployment Rights Act (i.e., Counts IV and V of the Complaint), granted the plaintiff leave to amend the complaint to assert a cause of action pursuant to the Vietnam Veterans Reemployment Rights Act, and ordered further briefing about whether the

discovery rule applied to determine when the plaintiff's causes of action first accrued pursuant to the factors set forth in *Woodruff v. McConkey*, 524 A.2d 722, 727-28 (D.C. 1987), whether the Back Pay Act applied and provided an independent source of relief and, finally, whether the CMPA preempted the plaintiff's claims and required administrative exhaustion. The plaintiff subsequently filed the First Amended Complaint [ECF No. 34], which replaced the prior Counts IV and V with a new Count IV alleging entitlement to compensation for lost wages and benefits pursuant to the Veterans Reemployment Rights Act.

The First Amended Complaint is now the subject of the pending Defendant District of Columbia's Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 36], which argues that either dismissal or summary judgment is warranted with respect to all causes of action because the plaintiff failed to exhaust his administrative remedies as required by the CMPA, all causes of action are barred by the applicable statutes of limitations, laches applies because the plaintiff knew or should have known that his claims accrued no later than 1994, the plaintiff had no employment reinstatement rights, the plaintiff failed to comply with D.C. Code § 12-309, and the plaintiff failed to join an indispensable party. Def. District of Columbia's Renewed Mot. to Dismiss or, In the Alternative, Mot. for Summ. J. 2-3 [ECF No. 36] (hereinafter cited as "Def.'s Mot. to Dismiss"). The defendant argues in the alternative that summary judgment should be granted in its favor with respect to each of the plaintiff's claims. Def. District of Columbia's Mem. of P. & A. In Support of Renewed Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. 5 [ECF No. 36] (hereinafter cited as "Mem. of P. & A. In Support of Renewed Mot. to Dismiss"). The plaintiff opposes the defendant's motion and moved to strike it. *See* Pl. Allan Lucas's Opp'n to Def.'s Renewed Mot. to Dismiss/Mot. for Summ. J. ¶ 2.

**LEGAL STANDARDS**

I.     Motions to Dismiss for Failure to State a Claim for Relief

The defendant challenges the entire First Amended Complaint and argues that all causes of action must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the allegations fail to state claims for relief.  Rule 8 of the Federal Rules of Civil Procedure sets the standard for adequately pleading a cause of action by mandating that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  When a party invokes Rule 12(b)(6) to challenge a complaint for failing to state a claim for relief pursuant to Rule 8, the Court must assess the complaint to determine whether it contains sufficient facts that, when accepted as true, evidence a claim that is "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Accordingly, a complaint that presents "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  "But 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'"  *Harris v. District of Columbia Water & Sewer*

*Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  Although "Rule 8

marks a notable and generous departure from the hyper-technical, code-pleading regime of a

prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions."  *Iqbal*, 556 U.S. at 678.

A court's determination about whether the complaint states a plausible claim for relief is

"a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  *Iqbal*, 556 U.S. at 679.  When making this determination, "the court may

consider the facts alleged in the complaint, documents attached thereto or incorporated therein,

and matters of which it may take judicial notice."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169,

173 (D.C. Cir. 2006).

II.      Motions for Summary Judgment

Summary judgment must be granted when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "A genuine issue of material fact exists 'if the evidence, viewed in a light most

favorable to the nonmoving party, could support a reasonable jury's verdict for the non-moving

party.'"  *Hairston v. Vance-Cooks*, 773 F.3d 266, 271 (D.C. Cir. 2014) (quoting *Hampton v.

Vilsack*, 685 F.3d 1096, 1099 (D.C. Cir. 2012).

**DISCUSSION**

I.       Whether the First Amended Complaint Fails to State Claims for Relief Because the
         Plaintiff has not Exhausted Administrative Remedies Pursuant to the CMPA

The defendant's renewed motion takes aim at the entirety of the First Amended

Complaint by arguing that all causes of action must be dismissed because the plaintiff failed to

exhaust his administrative remedies pursuant to the CMPA, which is codified at D.C. Code

§§ 1-601.01-1-636.03.  Mem. of P. & A. In Support of Renewed Mot. to Dismiss 5-7.  The plaintiff has never disputed that the CMPA might apply but, instead, argued during earlier briefing that he presented his claims to the District of Columbia Police and Firemen's Retirement and Relief Board and that "[i]f there are additional administrative remedies to pursue, the appropriate step would be to stay [the plaintiff's] current lawsuit, rather than dismiss it."  Pl.'s Opp'n to Defs.' Am. Mot. to Dismiss 8 [ECF No. 26].  In his post-hearing supplemental legal brief, however, the plaintiff now takes the position that the amendment of his complaint to add a claim under the Veterans Reemployment Act entitles him to remain in federal court and relieves him of the requirement to exhaust any administrative remedies under the CMPA.  Pl. Allan Lucas's Supplemental Brief 9 [ECF No. 35].  The plaintiff goes on to urge that, even if his Veterans Reemployment Act claim does not relieve him from pursuing administrative remedies under the CMPA, he nevertheless has presented a strong showing of compelling circumstances to justify waiving the administrative exhaustion requirement.  *Id.* at 9-10.

The District of Columbia Court of Appeals (the "D.C. Court of Appeals") has held that the CMPA was intended "to create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions—with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum." *District of Columbia v. Thompson*, 593 A.2d 621, 634 (D.C. 1991).  Consequently, "[w]ith few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind."  *Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000) (stating that "[w]e have noted several times the sweeping nature of [the CMPA] as encompassing nearly all employee claims arising out of workplace activity").  The United States

Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") has likewise viewed the CMPA to require the exhaustion of administrative remedies before a federal lawsuit may be entertained and has observed that a plaintiff "cannot avoid exhaustion requirements by raising garden-variety work-related grievances as statutory and constitutional claims[.]" *Lucas v. United States Gov't*, 268 F.3d 1089, 1094-95 (D.C. Cir. 2001).[5]   Although the D.C. Circuit has, on at least one occasion, noted that it has never resolved the question of whether the CMPA exhaustion requirement is jurisdictional or prudential for the federal courts, *see Johnson v. District of Columbia*, 552 F.3d 806, 810 n.2 (D.C. Cir. 2008), the D.C. Circuit nonetheless has treated the failure to exhaust CMPA administrative remedies as an impediment to the exercise of subject-matter jurisdiction, *see, e.g.*, *Thompson v. District of Columbia*, 428 F.3d 283, 288 (D.C. Cir. 2005) (remanding claims that were subject to CMPA exhaustion with instructions to dismiss for lack of subject-matter jurisdiction); *Lucas*, 268 F.3d at 1094 (stating that plaintiffs "must exhaust their administrative remedies under the Merit Act before filing suit in court" and affirming the dismissal of those claims "for lack of jurisdiction").   And this Court is inclined to agree that "when a federal court finds that the plaintiff failed to exhaust his or her administrative remedies, and the exhaustion requirement is prudential rather than jurisdictional, the appropriate disposition is to dismiss the plaintiff's unexhausted claims under Federal Rule of Civil Procedure 12(b)(6).   In such a case, the plaintiff has in fact 'failed to state a claim on which relief may be granted' with respect to the unexhausted claim or claims by failing to demonstrate that a necessary precondition to judicial review of those claims has been satisfied." *Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 36 (D.D.C. 2005), *aff'd*, 552 F.3d 806 (D.C. Cir. 2008).

---

[5]      The plaintiff should be familiar with this D.C. Circuit decision given that he was a named plaintiff.

In this case, the essence of the plaintiff's lawsuit is that the defendant failed to correctly calculate the plaintiff's retirement benefits and deprived the plaintiff of employment benefits by failing to treat his 1972 departure from the Metropolitan Police Department as a military furlough and by failing to reemploy the plaintiff upon his discharge from military service in 1978.  The plaintiff alleges causes of action for breach of contract, negligence, entitlement to back pay and attorney's fees pursuant to the Back Pay Act, and lost wages and benefits pursuant to the Veterans Reemployment Rights Act.  First Am. Comp. ¶¶ 30-51.  As a general proposition, these are work-related grievances that would generally fall within the gamut of the CMPA.  The CMPA states that "unless specifically exempted from certain provisions, this chapter shall apply to all employees of the District of Columbia government, except the Chief Judges and Associate Judges of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals and the nonjudicial personnel of said Courts."  D.C. Code § 1-602.01(a).  So the CMPA expressly covered the plaintiff, who was an employee of the District of Columbia government, First Am. Comp. ¶¶ 4, 13, 16.  The CMPA provides the exclusive remedies for an employee's "grievance," which is defined to mean "any matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees, but does not include adverse actions resulting in removals, suspension of 10 days or more, or reductions in grade, reductions in force or classification matters."  D.C. Code § 1-603.01(10); *see also Lewis v. District of Columbia*, 885 F. Supp. 2d 421, 427 (D.D.C. 2012) (acknowledging that the CMPA is generally the exclusive remedy for work-related grievances).

Despite the "sweeping nature" of the CMPA, *Robinson*, 748 A.2d at 411, there are exceptions to the prudential exhaustion requirement. The D.C. Circuit has identified three

-12-

"commonly recognized exceptions," namely (1) futility, (2) when administrative remedies are

inadequate, and (3) when irreparable injury would result absent immediate judicial review, albeit

the D.C. Circuit has commented that these three exceptions overlap "in some senses."

*Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986).  It is the

rule, however, that "the exhaustion requirement may be waived in 'only the most exceptional

circumstances.'"  *Id.* at 106 (quoting *Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs*, 714

F.2d 163, 168-69 (D.C. Cir. 1983)).  To establish futility, resort to the administrative process

"must appear clearly useless, either because the agency charged [with the process] has indicated

that it does not have jurisdiction over the dispute, or because it has evidenced a strong stand on

the issue in question and an unwillingness to reconsider the issue."  *Id.*  "The administrative

process is inadequate where the agency has expressed a willingness to act, but the relief it will

provide through its action will not be sufficient to right the wrong."  *Id.* at 107.  Irreparable

injury must be established by a clear showing that no remedy exists to repair the injury.  *Id.* at

109.  So the question for the Court, at this point, is whether the plaintiff has established that

waiving prudential exhaustion is warranted because exceptional circumstances demonstrate that

pursuing remedies under the CMPA would be futile, the administrative process would be

inadequate, and/or there is no remedy to repair the injury.

  As an initial matter, the plaintiff cites *Owens v. District of Columbia*, 923 F. Supp. 2d

241 (D.D.C. 2013), for his position that his cause of action pursuant to the Veterans

Reemployment Rights Act is beyond the scope of the CMPA so he is entitled to pursue his

claims in federal court.  Pl. Allan Lucas's Supplemental Brief 9 [ECF No. 35].  In *Owens*,

though, the Court relied on the D.C. Circuit's decision in *Bridges v. Kelly*,[6] 84 F.3d 470 (D.C.

Cir. 1996), which in turn was premised on the doctrine of equitable restraint set forth in *Younger*

*v. Harris*,[7] 401 U.S. 37 (1971).  The *Younger* equitable-restraint doctrine "restrains federal courts

from interfering in ongoing state judicial proceedings."  *Bridges*, 84 F.3d at 475 (internal

quotation marks omitted).  In *Bridges*, some of the adverse actions challenged by the plaintiff

were the subject of ongoing CMPA proceedings.  *Id.* at 476.  Here, though, because the First

Amended Complaint contains no allegation that there is an ongoing District of Columbia judicial

proceeding related to the plaintiff's grievances in this case, the *Younger* doctrine is not

applicable.

Furthermore, to the extent the plaintiff is citing *Owens* for the proposition that he is

seeking recovery under the Veterans Reemployment Act that might not be available through the

CMPA process, the D.C. Court of Appeals has stated that "[t]he unavailability under the CMPA

of relief that may be awarded in constitutional or tort litigation is . . . essentially irrelevant."

*White v. District of Columbia*, 852 A.2d 922, 926-27 (D.C. 2004).  According to the D.C. Court

of Appeals, "[a]n exclusive remedy does not lose its exclusivity upon a showing that an

alternative remedy might be more generous.  Because [the plaintiff] has not taken the requisite

steps to avail himself of his administrative remedy, we need not decide what, if any, relief would

be appropriate if he had filed a timely grievance . . . ."  *Id.* at 927.

The plaintiff next argues that he has made a strong showing of compelling circumstances

to support a waiver of prudential exhaustion based on the fact that he "spent three years pursuing

---

[6]      *Owens*, 923 F. Supp. 2d at 249.

[7]      *Bridges*, 84 F.3d at 471.

various agencies for information related to his claim before finally being referred to the

DCPFRRB" and "[i]t took the DCPFRRB over two years to issue its memorandum denying his

claim" so further subjection to administrative proceedings would be unjust.  Pl. Allan Lucas's

Supplemental Brief 10.  In *Bufford v. District of Columbia Public Schools*, however, the D.C.

Court of Appeals held that a plaintiff who has taken numerous informal steps to resolve a dispute

but never filed a formal grievance or shown that the agency would be unwilling or unable to

consider a formal grievance did not merit a waiver of prudential exhaustion.  611 A.2d 519, 524

(D.C. 1992).  As was the case in *Bufford*, in this case "[t]here is nothing to show that [the

plaintiff] was prevented from filing a formal grievance at any time."  *Id.* at 525.  Moreover, "[i]t

is well established . . . that delay alone will not suffice to trigger the futility exception."  *Dano

Res. Recovery Inc. v. District of Columbia*, 566 A.2d 483, 487 (D.C. 1989).

Even accepting as true all the allegations contained in the plaintiff's First Amended

Complaint, as the Court must do, it is clear on the face of the document that the plaintiff never

filed a formal grievance or otherwise invoked the required and exclusive CMPA procedures to

pursue his claims.  The Court, therefore, finds itself constrained to conclude that the defendant's

motion to dismiss the First Amended Complaint must be granted pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state claims for relief.  The dismissal will be without prejudice.

II.     Whether the Defendant District of Columbia's Renewed Motion to Dismiss or, in the
        Alternative, Motion for Summary Judgment Should Be Stricken

In the plaintiff's legal brief opposing the defendant's renewed motion to dismiss, the

plaintiff argues that the defendant's motion should be stricken for failing to limit its scope to the

matters upon which the Court requested additional briefing at the conclusion of the hearing on

the motion, because it repeats arguments raised in a prior brief, and because it addresses issues

that were resolved during the hearing.  Pl. Allan Lucas's Opp'n to Def.'s Renewed Mot. to Dismiss/Mot. for Summ. J. at ¶¶ 3-10.  Although the Court agrees that the defendant's motion was procedurally defective for failure to submit a statement of material facts not in dispute, which is required by the Court's local rules, and notwithstanding the defendant's reassertions of arguments raised in a prior motion, the Court will decline to strike the motion.  Whereas the Court requested additional briefing on certain identified issues, the Court never precluded the defendant from filing a proper response to the First Amended Complaint, and the defendant expressly requested that the Court treat the motion to dismiss as the defendant's supplemental legal brief, *see* Def. District of Columbia's Renewed Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. 1 [ECF No. 36].

## CONCLUSION

For the foregoing reasons, the Court will grant the pending Defendant District of Columbia's Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 36] and dismiss without prejudice all causes of action contained in the First Amended Complaint for failure to state claims for relief because administrative exhaustion, which is a necessary precondition to judicial review of those claims, has not been satisfied.  The Court also will deny the plaintiff's motion to strike.  An appropriate memorializing order will accompany this memorandum opinion.

September 30, 2015

_____
Thomas F. Hogan
Senior United States District Judge