# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ALLAN EARL LUCAS, JR.,

    Plaintiff,

v.

DISTRICT OF COLUMBIA,

    Defendant.

Case No. 13-cv-143 (TFH)

## MEMORANDUM OPINION

Pending before the Court is the District of Columbia's motion to dismiss plaintiff Allan Earl Lucas, Jr.'s Second Amended Complaint ("SAC"). [ECF No. 56]. The plaintiff seeks to recover financial damages stemming from the District of Columbia Metropolitan Police Department's ("MPD") alleged failure to treat his induction into the United States Marine Corps as a military furlough and to reemploy him upon his discharge from military service. In his Second Amended Complaint, the plaintiff alleges federal and common law claims. In Count One, the plaintiff claims that he is entitled to back pay pursuant to the Back Pay Act, 5 U.S.C. § 5596. SAC ¶¶ 40-43. In Count Two, he claims that he is entitled to compensation for lost wages and benefits pursuant to the Veterans' Reemployment Rights Act, 38 U.S.C. § 2021 (1992). *Id.* ¶¶ 44-48. In Counts Three and Four, he asserts claims for breach of contract and negligence, respectively. *Id.* ¶¶ 49-61.

In its motion to dismiss, the District contends that the section of the Veterans' Reemployment Rights Act that the plaintiff cites does not exist, and that the plaintiff has failed to allege the elements of a Back Pay Act claim. The District also argues that the plaintiff's common

law claims are preempted by the Comprehensive Merit Personnel Act, and that they are barred by the statute of limitations.

I.      FACTUAL BACKGROUND[1]

In May 1972, the plaintiff began employment with the Metropolitan Police Department. SAC ¶ 4. He was "inducted" into the military to serve in the Vietnam War in December 1972. *Id.* ¶ 5. Although he gave MPD notice of his induction, he was "never offered or provided any separation counseling" or information regarding his employment rights. *Id.* ¶ 6. He was also "never informed of his employment right to a military furlough." *Id.* Instead of being offered a military furlough, Mr. Lucas was "coerced into submitting his resignation" from MPD in January 1973. *Id.* ¶ 7. The personnel form documenting his departure from MPD stated that he resigned "to enter the armed services." *Id.* He entered the United States Marine Corps in February 1973, *id.*, and was honorably discharged in February 1978, *id* ¶ 9.

Within days of his discharge, the plaintiff wrote to MPD requesting that he be reinstated to his previous position. *Id.* ¶ 10. MPD denied his request and told him that it did not have a record of his employment. *Id.* ¶ 11. The plaintiff then obtained work with the United States Marshals Service. *Id.* ¶ 14.

MPD reemployed the plaintiff in September 1982. He was hired on a probationary status and was placed into the District's "post-home rule" municipal retirement plan instead of the federal retirement plan. *Id.* ¶ 16. In 1994, Mr. Lucas obtained employment with the District of Columbia Department of Corrections and was reinstated to the federal civil service law enforcement retirement system. *Id.* ¶¶ 17-28. He retired on May 16, 2005. *Id.* ¶ 19.

---

[1] In considering the District's motion to dismiss, the Court accepts the plaintiff's well-pleaded factual allegations as true. *Banneker Ventures LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

On the date of his retirement, he met with Ms. Wanda Moncrieff, a Human Resources Specialist from the District of Columbia Office of Personnel. *Id*. ¶ 20. During the meeting, he learned that his previous service with MPD had been recorded by the Department of Human Resources and the Office of Personnel Management ("OPM"). *Id*. He alleges that his "total service computation sheet" was changed to reflect a military furlough. *Id*. His federal retirement benefits were approved by the Department of Human Resources in May 2005 and reflected his initial employment with MPD. *Id*. ¶ 21.

On February 3, 2007, the plaintiff received correspondence from OPM informing him that "[22] years of his previously credited federal service would not be eligible for annuity unless he paid $55,419 plus interest" into the federal Civil Service Retirement System. *Id*. ¶ 24. OPM informed him that his military service time "should have been redeposited and paid before retiring, and would be deducted from his retirement." *Id*. He asserts that this letter was his "first indication an error had possibly occurred when calculating his federal benefits." *Id*. ¶ 24. On February 9, 2007, he received an additional letter from OPM stating that he owed $5,955.87 because of overpayments due to the District's erroneous calculations. *Id*. ¶ 25. OPM then began to withhold $165 from his monthly annuity. *Id*. ¶ 26. The plaintiff responded to OPM's letters and requested that an investigation be conducted. *Id*. ¶ 26. He does not know whether OPM conducted an investigation. *Id*. On March 1, 2007, his "retirement deposit" was "drastically reduced without explanation." *Id*. ¶ 28.

On March 7, 2007, he sent a letter to Ms. Moncrieff at the District of Columbia Office of Personnel telling her that his retirement payments were drastically reduced and that he "was told" that because he received a military furlough, he needed to be "restored" to receive his original federal benefits. *Id*. ¶ 29, Ex. 1. Because he was not restored to MPD in 1978, "none of

his years of public service" since 1973 were creditable to his retirement. *Id*. He then asked Ms. Moncrieff "what [was] going on," and further asked her "[w]hat does OPM mean by saying that [he] received a furlough but was not restored" when she had already reviewed and approved his benefits. *Id*. He asserted that "something [was] terribly wrong," then formally requested that the D.C. Office of Personnel investigate his "grievance." *Id*.

Between March 2007 and March 2010, the plaintiff contacted OPM and the District of Columbia Retirement Board approximately 52 times. *Id*. ¶ 30. He received "nothing but the run-around." *Id*. On March 26, 2010, the plaintiff wrote to the District of Columbia Retirement Board requesting the correction and restoration of his benefits. SAC ¶ 31, Ex. 2. Around April 27, 2010, he received a response from the District of Columbia Retirement Board acknowledging his grievance, but concluding that it had no responsibility to determine eligibility for retirement, which was the responsibility of the Police and Firefighters' Retirement and Relief Board ("the Board"), or to determine employment rights with MPD. The District of Columbia Retirement Board forwarded Mr. Lucas' letter and attachments to the Board and to MPD's Human Resources Office. SAC ¶ 32, Ex. 3.

On August 18, 2010, the plaintiff met with Ms. Moncrieff, Sheila-Ford Haynes, an MPD Human Resources Specialist, and Pamela Brown, an attorney who represented the Board. During the meeting, Ms. Moncrieff "acknowledged that [the plaintiff] had not received proper separation counseling," and Ms. Brown then "conceded" that he should have received such counseling. SAC ¶ 33. Ms. Brown and Ms. Ford-Hayes also acknowledged that he left employment for military duty and had been eligible for a military furlough. *Id*. Ms. Brown ultimately "demanded" that Ms. Ford-Haynes stop speaking and ended the meeting to further investigate the grievance. *Id*.

4

Plaintiff's counsel wrote follow-up letters to Ms. Brown on February 7, March 6, March 28, and September 20, 2012. SAC ¶ 34. The plaintiff received a 14-page legal opinion from the Board dated October 9, 2012 that concluded, after conducting "an investigation of the matter," that "[t]he *doctrine of laches* bar[red] any claim in this matter because of Mr. Lucas' unreasonable delay," and that the Board had "no jurisdiction" to resolve his claims. *Id.* ¶ 35, Ex. 4 at 13-14. The plaintiff filed a complaint in this Court on February 4, 2013. [ECF No. 1].

## II. LEGAL STANDARD

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss based on Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a motion to dismiss, the Court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Banneker Ventures,* 798 F.3d at 1129. The Court may consider facts alleged in the complaint, as well as "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (internal quotation marks omitted and edits accepted).

## III. DISCUSSION

### A. <u>The Plaintiff's Federal Claims</u>

#### i. The Plaintiff Has Stated a Claim Under the Veterans' Reemployment Rights Act.

The plaintiff alleges that after he was honorably discharged from the military in 1978, he should have been reinstated to his employment with MPD pursuant to the Veterans' Reemployment Rights Act, which was formerly codified at 38 U.S.C. § 2021. SAC. ¶¶ 44-48. The District contends that the Court should dismiss this claim because § 2021 no longer exists. Mem. in Supp. Mot. Dismiss at 6. The District also argues that, even if it still existed, the statute applies only to private employers and not to the District. *Id*. at 6 n.3.

Originally passed in 1974, the Veterans' Reemployment Rights Act[2] ("VRRA") provided that "any person . . . inducted into the Armed Forces of the United States under the Military Selective Service Act . . . for training and service and who leaves a position" to perform that training and service shall, if still qualified, "be restored to such position or to a position of like seniority, status, and pay." 38 U.S.C. § 2021(a)(A)(i)(1992), Pub. L. No. 93-508, 88 Stat. 1594 (1974). The VRRA's reinstatement protections apply to individuals who "satisfactorily complete[] military service, and appl[y] for re-employment within 90 days of being discharged from the military. . . ." *Coffy v. Republic Steel Corp*., 447 U.S. 191, 193 (1980). The VRRA should be "liberally construed for the benefit of the returning veteran." *Id*. at 196.

In 1992, the statutory provisions were relocated to 38 U.S.C. § 4301, *et seq*.; then in 1994, the VRRA was amended and renamed the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). 38 U.S.C. § 4301, *et seq*., Pub. L. No. 103-353, 108

---

[2] The VRRA was passed as part of the broader Vietnam Era Veterans' Readjustment Assistance Act of 1974. 38 U.S.C. § 1501, *et seq*. (1974); Pub. L. No. 93-508, 88 Stat. 1578-1602 (1974). The plaintiff refers to § 2021 as the "Vietnam Veterans Reemployment Rights Act." SAC ¶ 10. Courts often refer to that section as the "Veterans' Reemployment Rights Act," and the Court shall use that name throughout this opinion.

Stat. 3149 (1994). Congress amended it in order to clarify, "'simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions.'" *Baldwin v. City of Greensboro*, 714 F.3d 828, 834 (4th Cir. 2013) (quoting H.R. Rep. No. 103-65, Pt. I, at 18 (1993)).

Despite USERRA's existence, the VRRA continues to apply to claims that arose before USERRA became applicable in late 1994. *See* Pub. L. 103-353, § 8(a)(2) (stating in the section on "Transition Rules and Effective Dates" that the "provisions of chapter 43 of tile 38 . . . in effect on the day before" USERRA's enactment—i.e., the VRRA—"continue to apply to reemployments initiated before the end of [the] 60-day period" beginning Oct. 13, 1994); *see, e.g., Watters v. Tilden Mining Co.,* 409 F. App'x 812, 815 (6th Cir. 2010) (applying the VRRA instead of USERRA because the court "must apply the version of the statute in effect when [the plaintiff's] reemployment was initiated on July 26, 1988."); *Lapine v. Town of Wellesley*, 304 F.3d 90, 93 n.1 (1st Cir. 2002) (applying "the VRRA, and not the USERRA," where the plaintiff initially sought reemployment in 1992); *Bowlds v. Gen. Motors Mfg. Div. of Gen. Motors Corp*., 411 F.3d 808, 811-12 (7th Cir. 2005) (finding that USERRA did not apply retroactively to claims that arose in the 1980's, and analyzing those claims under the VRRA). The District's assertion that the plaintiff cannot seek relief under the VRRA because the statute no longer exists fails. The VRRA applies to the plaintiff's claims.

Furthermore, contrary to the District's argument that the VRRA only applies to private employers, the VRRA applies to individuals employed by public entities, including the District of Columbia. *See* 38 U.S.C. § 2021(a)(A)(1992) (providing for qualified employees to be restored to their positions or positions of similar seniority, status and pay "if such [a] position was in the employ of . . . the United States Government, its territories, or possessions, or political

7

subdivisions thereof, or the District of Columbia . . . ."). The plaintiff has alleged that he was employed by MPD before he left for military service, and that he sought reemployment with MPD a few days after his honorable discharge from the military. SAC ¶¶ 4-10. Given the plaintiff's allegations, the Court finds that the plaintiff has adequately stated a claim for relief under the VRRA.

                ii.        Dismissal of the Plaintiff's Back Pay Act Claim Would be Premature.

In addition to his VRRA claim, the plaintiff asserts that he suffered "unjustified and unwarranted personnel actions" which resulted in the withdrawal and reduction of his pay and benefits. SAC ¶ 41. He seeks compensation and attorney's fees pursuant to the Back Pay Act, 5 U.S.C. § 5596.

The Back Pay Act provides that "a federal employee is entitled to back pay if he or she 'is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of [his] pay, allowances, or differentials.'" *Brown v. Sec'y of Army*, 918 F.2d 214, 216 (D.C. Cir. 1990) (quoting 5 U.S.C. § 5596(b)(1)). The Back Pay Act is "an auxiliary measure that operates only at the relief stage." *Brown*, 918 F.2d at 217.

The District argues that the plaintiff has failed to state a claim under the Back Pay Act because he has not alleged that an "appropriate authority" determined that he suffered an unjustified or unwarranted personnel action. Mem. in Supp. Mot. Dismiss at 5. In response, the plaintiff argues that the personnel who acknowledged in the August 2010 meeting that his rights had been violated constitute an "appropriate authority" under the statute. Opp'n at 8 [ECF No. 58]. In the alternative, he requests that he be permitted to re-assert his claim after an appropriate authority makes such a determination. *Id.*

8

Although the federal regulations implementing the Back Pay Act do not apply to District of Columbia employees, the Court looks to them for guidance on what constitutes an "appropriate authority." *See Am. Fed'n of Gov't Emps. v. D.C. Water & Sewer Auth.*, 942 A.2d 1108, 1114 (D.C. 2007) ("look[ing] to the federal regulations for [its] interpretation of the Back Pay Act" regarding attorney's fees). The regulations define an appropriate authority as "an entity having authority in the case at hand to correct or direct the correction of an unjustified or unwarranted personnel action." 5 C.F.R. § 550.803 (2019). Qualifying entities include "a court," and "the head of an employing agency or another official of the employing agency to whom such authorization is delegated." *Id*. Because the plaintiff does not allege that the employees in the August 2010 meeting had the authorization to correct or direct the correction of an unjustified personnel action, he has not sufficiently alleged that an appropriate authority determined that he suffered an unwarranted personnel action. Even if they did have the authority, the plaintiff does not allege that they made such a determination in writing as required by the regulations. *See* 5 C.F.R. § 550.804(c) ("The requirement for an 'administrative determination' is met when an appropriate authority determines, in writing, that an employee has been affected by an unjustified or unwarranted personnel action . . . ."). Moreover, the Board's 2012 letter to the plaintiff did not determine that an unwarranted personnel action occurred; rather it concluded that the plaintiff's claims were barred by latches, and that it lacked jurisdiction over them. The letter did not address the underlying merits of the plaintiff's claims. SAC Ex. 4.

Nevertheless, it would be preemptive to dismiss the plaintiff's Back Pay Act claim at this stage of the litigation. This Court constitutes an "appropriate authority" under the Back Pay Act, and could potentially make a finding as to whether the plaintiff suffered an unwarranted or unjustified personnel action. 5 C.F.R. § 550.803; *see United States v. Fausto*, 484 U.S. 439, 454

9

(1998) (finding that an "appropriate authority" would "include the [administrative agency itself], . . . or the Federal Circuit where those entities have the authority to review the agency's determination."); *Adam v. Norton*, 636 F.3d 1190, 1193 (9th Cir. 2011) (finding that "the district court that rendered judgment for the plaintiffs . . . was, without question, an 'appropriate authority' to make a finding of wrongful termination" under the Back Pay Act). Because the plaintiff's VRRA claim survives the District's motion to dismiss and the Back Pay Act is "an auxiliary measure that operates only at the relief stage" of litigation, the Court will deny the District's motion to dismiss the Back Pay Act claim without prejudice. *Brown*, 918 F.2d at 217.

  B.  <u>The Plaintiff's Common Law Claims</u>

    i.  Judicial Review of the Plaintiff's Common Law Claims is Not Preempted by the Comprehensive Merit Personnel Act.

In addition to his federal claims, the plaintiff asserts claims for breach of contract and negligence. In particular, the plaintiff asserts that the District had contractual obligations through the District Personnel Manual to inform the plaintiff of his restoration rights and to restore him to his former position upon his return from military duty. SAC ¶¶ 50-55. He alleges that the District breached that duty. The plaintiff also asserts that the District was negligent when it failed to keep accurate records of his employment. SAC ¶¶ 56-61.

The District argues that the Comprehensive Merit Personnel Act preempts the plaintiff's common law claims and that, as a result of that preemption, the Court lacks subject matter jurisdiction over them. Mem. in Supp. Mot. Dismiss at 7. In response, the plaintiff contends that his claims are not preempted because the District of Columbia determined that it does not have jurisdiction to hear the plaintiff's grievance. Opp'n at 9.

The Comprehensive Merit Personnel Act ("CMPA"), D.C. Code § 1-601.01 *et seq.*, is with "'few exceptions . . . the exclusive remedy for a District of Columbia public employee who

has a work-related complaint of any kind.'" *Lucas v. District of Columbia*, 133 F. Supp. 3d 176, 183 (D.D.C. 2015) (quoting *Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000)). The Court has already determined that the CMPA applies to the plaintiff and covers his common law causes of action. *Lucas v. District of Columbia*, No. 13-cv-143, 2018 WL 999903, at *2 (D.D.C. Feb. 21, 2018).

The CMPA requires that qualifying plaintiffs exhaust administrative remedies before pursuing cases in court. *See, e.g., Lucas v. United States Gov't*, 268 F.3d 1089, 1094 (D.C. Cir. 2001) (finding that employees of the District of Columbia Department of Corrections "must exhaust their administrative remedies under the [CMPA] before filing suit in court."); *Payne v. District of Columbia*, 592 F. Supp. 2d 29, 35-36 (D.D.C. 2008) (collecting cases where courts have dismissed common law claims for failure to exhaust under the CMPA). "Although the D.C. Circuit has, on at least one occasion, noted that it has never resolved the question of whether the CMPA exhaustion requirement is jurisdictional or prudential for the federal courts . . . the D.C. Circuit nonetheless has treated the failure to exhaust CMPA administrative remedies as an impediment to the exercise of subject-matter jurisdiction." *Lucas*, 133 F. Supp. 3d at 183. In this litigation, the Court has already concluded that "the appropriate disposition" for unexhausted CMPA claims is to dismiss them under Federal Rule 12(b)(6) for failure to state a claim. *Id*.

The District cites language from *White v. District of Columbia* and *Holman v. Williams* to argue that the CMPA preempts any judicial review and deprives the Court of subject matter jurisdiction regardless of whether the plaintiff has pursued administrative remedies. Mem. in Supp. Mot. Dismiss at 6; *Holman v. Williams*, 436 F. Supp. 2d 68 (D.D.C. 2006); *White v. District of Columbia*, 852 A.2d 922 (D.C. 2004). In *Holman*, while considering tort claims brought by a former director of the District of Columbia Office of Human Rights, the district

court stated that "[p]reemption by the CMPA divests the trial court—whether it be the Superior Court or this Court—of subject matter jurisdiction"—language that the District cites in its motion. *Holman*, 436 F. Supp. 2d at 74. However, the District takes this language out of context. In *Holman*, the plaintiff brought tort claims directly to the district court without first following CMPA grievance procedures. *Id*. at 74-75. The court concluded that the "plaintiff was the kind of employee entitled to avail himself of CMPA grievance procedures," that his "employment-related claims . . . f[e]ll within the CMPA's expansive definition of a 'grievance,'" and that his claims were preempted because he did not pursue his grievances through the CMPA. *Id*. at 76.

Similarly, in *White*, when considering an action for fraudulent misrepresentation, the District of Columbia Court of Appeals used language that, if read in isolation, indicates that the CMPA provides the only relief for plaintiffs like Mr. Lucas. *See White*, 852 A.2d at 925; 926 (agreeing that Mr. White's "sole recourse" for the "alleged misrepresentation was to file a grievance with the Office of Inspector General and to seek administrative relief pursuant to the CMPA," and that "the CMPA provid[es] the sole remedy for District employees" in common law actions). However, the court in *White* made these statements while observing that White "never filed the requisite grievance with the Office of Inspector General," and concluding that the court "need not decide what, if any, relief would be appropriate if he had filed a timely grievance with the Office of the Inspector General," because "White ha[d] not taken the requisite steps to avail himself of his administrative remedy." *Id*. at 926-27. In both cases, the CMPA preempted judicial review because the plaintiffs failed to exhaust their administrative remedies. *See also, e.g., Payne*, 592 F.Supp.2d at 35 ("The CMPA makes courts the last forum for reviewing employment-related disputes in the District of Columbia, not an alternative forum.") (internal quotation marks omitted); *District of Columbia v. Thompson*, 593 A.2d 621,

634 (D.C. 1991) ("It would seem, therefore, from the purpose and text of CMPA, including its judicial review provisions, that the Council [of the District of Columbia] plainly intended CMPA to create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions—with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum.") (internal quotation marks omitted).

The plaintiff has alleged that he exhausted his administrative remedies, and the District does not challenge that allegation, as it did in previous filings.[3] Accordingly, the Court concludes that the CMPA does not preempt judicial review of the plaintiff's common law claims.

      ii.      The Statute of Limitations Does Not Conclusively Bar the Plaintiff's Common Law Claims.

The District contends that the plaintiff's common law claims are barred by the District of Columbia's three-year statute of limitations. Mem. in Supp. Mot. Dismiss at 8. The District argues that the statute of limitations began to accrue when the plaintiff received the February 3, 2007 OPM letter notifying him of the reduction in his benefits. The plaintiff disputes these assertions, and argues that the statute of limitations did not begin to run until October 9, 2012, when the Board notified him that it lacked jurisdiction over his claims or, in the alternative, from the date of the August 2010 meeting. Opp'n at 6-7.

The statute of limitations is "an affirmative defense that [the] defendant must prove." *Firestone v. Firestone*, 76 F.3d 1205, 1210 (D.C. Cir. 1996). "At the motion to dismiss stage, dismissal on statute-of-limitations grounds is proper 'only if the complaint on its face is conclusively time-barred.'" *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 788 (D.C.

---

[3] In its opposition to the plaintiff's motion to amend his amended complaint, the District argued that the plaintiff failed to exhaust his administrative remedies because he did not appeal the Board's decision to the Office of Employee Appeals. The Court found that the CMPA "require[d] employees to appeal final agency decisions to the OEA under specific circumstances, none of which appear[ed] to apply to [the] plaintiff's grievances." *Lucas*, 2018 WL 999903, at *2.

Cir. 2019) (quoting *Commonwealth Land Title Ins. Co. v. KCI Techs.*, 922 F.3d 459, 464 (D.C. Cir. 2019)). "'[C]ourts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint because 'statute of limitations issues often depend on contested questions of fact.'" *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017) (quoting *Firestone*, 76 F.3d at 1209).

The plaintiff's contract and negligence claims are governed by the District of Columbia's three-year statute of limitations. D.C. Code §§ 12-301(7); (8). "As a general rule, where the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Mullin v. Wash. Free Weekly,* 785 A.2d 296, 298 (D.C. 2001) (internal quotation marks omitted and edits accepted). However, where the relationship between the fact of injury and the wrongful conduct is obscure at the time of injury, "D.C. courts apply a more forgiving 'discovery rule' under which a claim accrues only if a plaintiff has actual or inquiry notice of a cause of action, regardless of when the injury occurred." *Momenian*, 878 F.3d at 388.

The parties agree that the discovery rule is applicable here. The discovery rule provides that "'a cause of action accrues when a plaintiff knew or should have known through the exercise of reasonable diligence of: (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.'" *Id*. (quoting *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004)). Under this test, the plaintiff's claims are untimely if he knew or with reasonable diligence should have known before February 4, 2010—three years before he filed his complaint—that his retirement benefits had been reduced, that there was some evidence of breach of contract and/or negligence on the part of the District of Columbia, and that there was a

14

causal relationship between that wrongdoing and his injury. *See id.* at 390; *Capitol Serv. Management, Inc.*, 933 F.3d at 791.

The District argues that the 2007 OPM letter demonstrates that the plaintiff had actual knowledge of his injury, that he knew the District caused it, and that he had some evidence of wrongdoing. Mem. in Supp. Mot. Dismiss at 9; Reply at 5 [ECF No. 50]. In support, the District points to the plaintiff's response to OPM's letter where he asserted that "he had been given conflicting information by the District of Columbia about the calculation of his retirement benefits," stated that something was "terribly wrong," and requested an investigation.

The 2007 OPM letter provided the plaintiff with notice that his benefits were reduced, satisfying the "injury" element of the discovery rule. According to the plaintiff's allegations, in 2007, OPM informed him that his 22 years of federal service were not eligible for an annuity unless he paid over $50,000 into the federal Civil Service Retirement System. SAC ¶ 24. He also asserts that he was told "his military service time should have been re-deposited and paid for before retiring," and would be deducted from his retirement payments. *Id.*

However, the plaintiff's causes of action are not confined to the reduction of his benefits. In order to satisfy the other elements of the discovery rule, the plaintiff needed "some evidence" of the breach of contract and negligence claims for those claims to accrue, along with a causal connection between those actions and his injury. *See Buissineau v. President and Dirs. of Georgetown Coll.,* 518 A.2d 423, 427 (D.C. 1986) (commenting that a "prospective plaintiff's negligence cause of action did not accrue until the individual knew or should have known that she had been injured by the alleged negligence [i.e., wrongdoing] of the defendant.") (internal quotation marks omitted). The District has not demonstrated what evidence the plaintiff had of his breach of contract and/or negligence claims, or that this wrongdoing—not just the District

15

itself—caused the plaintiff's injury. Accordingly, the Court cannot find that the plaintiff "conclusively" had actual notice to trigger the accrual of the statute of limitations in 2007 on either of his common law claims. *Capitol Servs. Mgmt*, 933 F.3d at 788.

The District does not argue that the plaintiff had actual notice on another date, or that the plaintiff had inquiry notice under the discovery rule before February 4, 2010.[4] Because it is a factual question, the Court declines to wade further into the party's dispute as to when the statute of limitations began to accrue. The plaintiff's Second Amended Complaint is not conclusively time-barred.

### iii. The Plaintiff has Stated a Claim for Breach of Contract.

Finally, the District asserts that the plaintiff has failed to state a claim for breach of contract because he failed to "assert any factual allegations establishing that [the parties] entered into a contract or that the terms contained in the Personnel Manual were contractual." Mem. in Supp. Mot. Dismiss at 10. The plaintiff did not respond to this argument in his opposition to the motion to dismiss. Citing Local Civil Rule 7(b), the District argues that the Court may treat the plaintiff's breach of contract claim as conceded and dismiss it. Reply at 5.

Local Civil Rule 7(b) provides that

> Within 14 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.

LCvR 7(b). In the past, courts have dismissed claims where plaintiffs did not respond to them in their opposition to the motion to dismiss. However, the D.C. Circuit recently limited the scope of

---

[4] Inquiry notice is "that notice which a plaintiff would have possessed after due investigation." *Capitol Servs. Mgmt*, 933 F.3d at 791 (internal quotation marks omitted). *See also id.* (inquiry notice refers to the "quantum of knowledge required to charge a plaintiff with knowledge of his cause of action.") (internal quotation marks omitted and edits accepted).

16

Local Civil Rule 7(b) by concluding that "a party may rest on its complaint in the face of a motion to dismiss if the complaint itself adequately states a plausible claim for relief." *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332, 345 (D.C. Cir. 2018). The Circuit emphasized that Local Rule 7(b) is "not a tool to subvert the [Federal Rules of Civil Procedure] 12(b)(6) inquiry simply because the court finds the plaintiff's opposition to the motion to dismiss, although pressed, underwhelming." *Id*. The Circuit then concluded that the district court abused its discretion when "kicking [the plaintiff] out of court under Local Rule 7(b)" where the complaint "stated a plausible claim for relief" and the opposition to the motion to dismiss "indicated it adhered to its position that its complaint was well-pleaded." *Id*. Because the plaintiff has responded to the motion to dismiss, albeit not the District's arguments regarding his breach of contract claim, the Court will address the adequacy of the plaintiff's breach of contract claim.

To state a cause of action for a breach of contract, a plaintiff must allege "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

The District contends that the plaintiff's claim should be dismissed because it failed to allege that the parties entered into a contract or that the terms in the District Personnel Manual were contractual. However, this is too narrow a view of the requirements to plead a cause of action in light of the plaintiff's allegations. In support of his breach of contract claim, the plaintiff alleges that the District Personnel Manual was applicable to him when he was employed by MPD from 1972 to 1973, and that it was "incorporated into the terms of [his] employment." SAC ¶ 50. He asserts that Chapter 8 of the District Personnel Manual required the District to

17

inform employees leaving for military duty of their restoration rights, including how to exercise them, and to restore employees who leave for military duty to the employment status they enjoyed when they left their position. *Id*. ¶¶ 51-52. He asserts that MPD did neither, and that he has suffered a loss of earnings and retirement payments as a result. *Id*. ¶ 53. In doing so, the plaintiff has "give[n] the defendant fair notice" of the plaintiff's breach of contract claim and the "grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (internal quotation marks omitted). He has stated a plausible contract claim.

## IV. CONCLUSION

For the foregoing reasons, the District's motion to dismiss the plaintiff's Second Amended Complaint will be DENIED. An order accompanies this memorandum opinion.

October 2, 2019  _____
Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE