## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHARON LUCAS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 13-00143 (TFH)** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION</u>

### I.   INTRODUCTION

Pending before the Court are Plaintiff Sharon Lucas' Partial Motion for Summary Judgment [ECF No. 113] and Defendant District of Columbia's Motion for Summary Judgment [ECF No. 114]. Plaintiff Sharon Lucas, as personal representative of her late husband Allan Earl Lucas' estate, seeks to recover financial damages stemming from the District of Columbia Metropolitan Police Department's ("MPD") alleged failures to treat Mr. Lucas' induction into the United States Marine Corps as a military furlough, to reemploy him upon his discharge from military service, and to properly maintain his employment records after he was separated from MPD employment in 1973. Mrs. Lucas alleges violations of the Veteran's Reemployment Rights Act ("VRRA"), 38 U.S.C. § 2021 (Count II); Breach of Contract (Count III); and Negligence (Count IV). *Id.* She also contends that these violations are unwarranted personnel actions, and thus entitle her to compensation under the Back Pay Act, 5 U.S.C. § 5596 (Count I). *Id.*

The Plaintiff argues that there are no genuine material facts to dispute her claims, and she is entitled to summary judgment as to liability on all counts. *See generally* Pl. MSJ [ECF No. 114].

The Defendant argues that that it is entitled to summary judgment on all counts because the undisputed material facts demonstrate that Count II is time-barred under the doctrine of laches, Counts III and IV are time-barred under the applicable statute of limitations, and Count I rises and falls with Counts II-IV. *See generally* Def. MSJ [ECF No. 115].

On October 3, 2022, the Court heard argument on the competing Motions for Summary Judgment. For the reasons described below, the Court will grant the Defendant's Motion for Summary Judgment on all counts.

## II.    PROCEDURAL HISTORY

The original plaintiff in this case, Allan Earl Lucas, filed his Complaint on February 4, 2013, against the District of Columbia, the District of Columbia Metropolitan Police Department, the District of Columbia Police and Firefighter Retirement Relief Board, and the District of Columbia Department of Human Resources. Complaint [ECF No. 1]. On December 17, 2013, Plaintiff amended his complaint to only include the District of Columbia as the Defendant. First Amended Complaint ("FAC") [ECF No. 34].

On September 20, 2015, the Court dismissed Mr. Lucas' lawsuit without prejudice because all claims asserted in the FAC were preempted by the Comprehensive Merit Personnel Act ("CMPA"), and the plaintiff had not exhausted his administrative remedies pursuant to that Act. Mem. Op., Sep. 20, 2015 [ECF. No. 39].

On February 21, 2018, the Court granted Mr. Lucas's Motion for Leave to File a Second Amended Complaint [ECF No. 50] over the Defendant's opposition. Order (Feb. 21, 2018) [ECF No. 53]. Plaintiff filed his Second Amended Complaint ("SAC") on February 21, 2018. [ECF No. 55]. The District then filed a Motion to Dismiss the Second Amended Complaint [ECF No. 56], which this Court denied on September 30, 2019. Order (Sept. 30, 2019) [ECF No. 56]. In its

October 2, 2019 Memorandum Opinion, this Court concluded that: (1) the plaintiff stated a claim under the VRRA; (2) dismissal of the plaintiff's Back Pay Act claim would be premature; (3) judicial review of the plaintiff's common law claims was not preempted by the CMPA; (4) the Statute of Limitations did not conclusively bar the plaintiff's common law claims; and (5) the plaintiff had stated a claim for breach of contract. *Lucas v. District of Columbia*, No. 13-cv-143 (TFH), 2019 WL 4860730 (D.D.C. Oct. 2, 2019). The Court subsequently entered a scheduling order dictating that summary judgment was to be fully briefed by August 2020. Scheduling Order, Oct. 31, 2019 [ECF No. 64]. However, due to COVID-19 and various other reasons, that schedule was extended numerous times. Sadly, Mr. Lucas passed away during this litigation on April 6, 2021.[1] Status Report, Apr. 13, 2021 [ECF No. 100].

On May 7, 2021, the Court held a status conference to discuss the possibility of referring this case for mediation. On May 19, 2021, the Court referred the matter to the District Court Mediation Program for forty-five (45) days. On September 15, 2021, the District filed a Status Report [ECF No. 103], informing the Court that although they were unable to reach a full settlement with the mediator, the parties had made progress with respect to their discovery issues. In response, the Court issued a Minute Order on September 22, 2021 temporarily staying discovery and setting a summary judgment briefing schedule. Minute Order (September 22, 2021). At the parties' request, the Court also deemed the pending discovery motions withdrawn without prejudice. *Id*. After further delays caused by a probate issue with Mr. Lucas's estate were finally resolved, the Court granted the Plaintiff's Motion for Substitution [ECF No. 104], appointed Sharon Lucas (Mr. Lucas' widow) as substitute Plaintiff, and set a summary judgment briefing schedule. Order (July 20, 2022) [ECF No. 112].

---

[1]      Due to a probate issue, Mr. Lucas was not formally replaced as plaintiff until July 2022. *See* Order, Jul. 20, 2022 [ECF No. 112].

The plaintiff filed her Partial Motion for Summary Judgment on August 18, 2022, and the Defendant filed its Motion for Summary Judgment on August 19, 2022. The parties filed competing Memoranda in Opposition on September 1, *see* Pl. Mem. Opp. [ECF No. 117], and September 2, 2022, *see* Def. Mem. Opp. [ECF No. 119]. Both parties filed their Replies on September 9, 2022. *See* Pl. Reply [ECF No. 120]; Def. Reply [ECF No. 121].

The Court heard arguments on the parties' cross motions for summary judgment on October 3, 2022, and took them under advisement. Minute Entry (Oct. 3, 2022).

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 mandates that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, however, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

Although "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party," *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted," *Anderson*, 477 U.S. at 249 (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The ultimate inquiry is "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

The evidence the Court may consider when passing on a summary judgment motion consists of "materials specified in Federal Rule of Civil Procedure 56(c) as well as any material that would be admissible or usable at trial." *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 145 (D.C. Cir. 2011) (internal quotation marks omitted). Pursuant to Rule 56(c), the Court is not limited to the evidence cited by the parties but also "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## IV.   UNDISPUTED MATERIAL FACTS

The parties both filed Statements of Undisputed Material Facts as well as Responses. *See* Pl. SOF [ECF No. 116]; Def. SOF [ECF No. 115 at 2]; Pl. Resp. SOF [ECF No. 118]; Def. Resp. SOF [ECF No. 119-1]. After reviewing both parties' submissions, and consistent with its finding during the hearing on October 3, 2022, the Court is satisfied that there are no material facts genuinely at issue. The relevant factual background is summarized below.

In May 1972, Allan Earl Lucas began his employment with the MPD as a Police Cadet. Pl. SOF ¶ 21. In connection with this employment, he was included in the federal Civil Service Retirement System ("CSRS"). *Id.* ¶ 23. In December 1972, Mr. Lucas received a draft notice from the government and gave the notice to the MPD, who instructed him to meet with human resources to fill out the paperwork for his separation. *Id.* ¶¶ 24-27. MPD did not provide Lucas with any counseling on his right to the restoration of his employment upon his return from military service despite knowing that he was resigning to join the military. *Id*. ¶¶ 32-33. After resigning from the MPD on January 20, 1973, he began his military service in February 1973. *Id.* ¶¶ 29-30; Def. SOF ¶¶ 11, 15.

5

Mr. Lucas was honorably discharged from the Marine Corps on February 3, 1978. Pl. SOF ¶ 35. On February 15, 1978, he went to the office of MPD's recruiting division with proof of his honorable discharge, informed them of his previous employment, and asked them if he could get his job back. Def. SOF ¶ 19; Pl. Resp. SOF ¶ 19. There, he spoke with Sergeant Donald Christian, who gave him a writing pad and told him to a write a letter to Addison Davis, the Commander of the MPD's recruiting division, informing him of his previous employment, that he had been honorably discharged from the military, and that he would like to return to MPD. Def. ¶¶ 19-20; Pl. Resp. SOF ¶¶19-20. Mr. Lucas then provided the letter to the MPD, and Sergeant Christian informed him that someone would contact him about his request. Def. SOF ¶ 21-22. A short time later, MPD denied his reinstatement request both verbally and in writing, informing Mr. Lucas that it had no record of his employment. Pl. SOF ¶¶ 39-44. After further inquiry, he spoke to Sergeant Christian on the phone, who told him that he was rejected because the District had no record of his prior employment. Def. SOF ¶ 23. Subsequently, Lucas went to the MPD in person to try and learn more, where a different MPD employee informed him that his request was denied "because there was no record of [him]." *Id.* ¶ 25. After this, Mr. Lucas testified that he "thanked them very much and left." Def. SOF ¶ 26. He did not attempt to get in touch with anyone he previously worked with, apply for another job with MPD, or otherwise challenge the MPD's decision. *Id.* ¶¶ 27-28.

In April of 1978, Mr. Lucas began working as a security officer at the National Gallery of Art, but he left that job two weeks later. *Id.* ¶ 29. In April 1980, he was hired by the U.S. Marshals Service, where he worked until September 1982 when he returned to the MPD. *Id.* ¶ 30. Upon his return to the MPD, he was placed in the District Municipal Retirement system, not the federal CSRS as he had assumed. *Id.* ¶¶ 34-35; Pl SOF ¶ 53. Sometime early in 1983, "Mr.

Lucas was shocked to learn that he was under" the municipal retirement system. Def. SOF ¶ 35. He went to the Office of Personnel to complain about this, but they informed him that because of the break in his employment he was under the municipal system, as were all employees hired after 1980. *Id.* ¶ 36. Mr. Lucas did nothing further at that time to attempt to seek reinstatement into the federal retirement system. Def. SOF ¶ 38; Pl. Resp. SOF ¶ 38.

In the late 1980s, Mr. Lucas learned that the Department of Corrections ("DOC") was still part of the federal retirement system. Def. SOF ¶ 39-41. After inquiring with the federal Office of Personnel Management ("OPM") to learn more, a specialist there informed him that CSRS-eligibility ended for District of Columbia employees in early 1980 when the city became a municipal government. *Id.* ¶ 42; Pl. Resp. SOF ¶ 42. When Mr. Lucas asked if he could transfer to DOC and be reinstated to the CSRS, the specialist informed him that he would need to resign with the MPD and apply for employment with DOC. Def. SOF ¶¶ 43-44. Mr. Lucas resigned from the MPD on September 14, 1993. *Id.* ¶ 45. He acknowledged in his deposition that he resigned in order to be reinstated to the CSRS. *Id.* ¶ 46. Following his resignation, MPD's records indicate that he cashed out his retirement contributions to the municipal system. *Id.* ¶ 47.

Mr. Lucas then applied to work for DOC, and was hired as a Correctional Officer effective April 13, 1994. *Id.* ¶ 48. In September 1994 he wrote a letter to OPM, listing his positions and years of service, and requested a "printout showing [his] length of service certified by OPM, the amount of [his] retirement pension should [he] reach age 50 with over 30 years of government service[, and] [p]ayback at what rate to receive a full benefit." *Id.* ¶ 49 (quoting Def. MSJ Ex. 13, Letter dated Sep. 1, 1994). Later that month, OPM sent him a form entitled "Information From Your Retirement Records," which under the heading "Periods of Service," listed only the dates of Mr. Lucas' initial MPD employment from 1972-1973, and the dates of his

brief stint at the National Gallery of Art in 1978. *Id.* ¶ 50 (quoting Pl. MSJ Ex. 14, OPM Form dated Sep. 27, 1994).[2] In his deposition, Mr. Lucas testified that he received this letter, but "threw it in the trash" and that it was "like another door shut in his face." Def. MSJ Ex. 3, Dep. I of Pl. at 225:2-3, 226:20-227:3; Def. SOF ¶ 51.[3]

In May of 2005, Mr. Lucas retired from the DOC. Def. SOF ¶ 57; Pl. SOF ¶ 54. The Defendant approved his retirement, and "certified that all of his service with the District, the federal government, and the USMC was covered under the federal retirement system." Pl. SOF ¶ 54. Despite the previous confusion with his retirement, the plaintiff does not recall asking for an estimate of his retirement benefits. Def. SOF ¶ 58; Pl. Resp. SOF ¶ 58.

On or about February 3, 2007, the Mr. Lucas received correspondence from OPM informing him that his annuity was being reduced due to a miscalculation of his service record. Def. SOF ¶ 59; Pl. Resp. SOF ¶ 59; Pl. SOF ¶ 55.; Pl. MSJ, Ex. 40, Letter from OPM dated Feb. 5, 2007. Subsequently, he contacted OPM on multiple occasions to attempt to understand why his annuity payments were being reduced. Pl. SOF ¶ 56. He also "submitted written grievances to the Department of Human Resources (formerly the D.C. Office of Personnel) on March 7, 2007; to the District of Columbia Retirement Board on March 26, 2010; to the Police and Firefighters Retirement and Relief Board on May 13, 2010; and to the MPD on May 13, 2010." Pl. SOF ¶ 58.

---

[2]     The Plaintiff, in her Response to the Defendant's Statement of Facts, disputes this statement as incomplete, noting that "the second page of the cited document also notes other periods of service: "5/1/72-1/20/73; 1/20/73-2/3/78; 4/2/80- 9/18/82; 9/20/82-7/14/84; 3/18/85-4/18/93; 4/18/94-." Pl. Resp. SOF ¶ 52. However, she does not dispute that the only dates listed on the form under "Periods of Service" are the two described above. These dates on the second page are just written out by hand without any context.

[3]     The Defendant cites to the incorrect portion of the deposition transcript here, but the exact testimony it references is available at the above citation. The Plaintiff correctly disputes that Def. MSJ, Ex. 3, Dep. I of Pl. at 54:9-15 does not support this statement, *see* Pl. Resp. SOF ¶ 51, but the testimony from the citation above is not disputed.

After receiving various responses from these agencies explaining why the reduction in calculation of benefits was correct, and meeting with representatives from those agencies, Mr. Lucas filed this lawsuit 2013. Pl. SOF ¶¶ 59-61, 68-69; Def. SOF ¶¶ 60-62.

**V.   CROSS MOTIONS FOR SUMMARY JUDGMENT**

The Plaintiff filed her Partial Motion for Summary Judgment as to Liability on August 18, 2022, asserting that she is entitled to judgment as a matter of law on all four counts as to the Defendant's liability. Pl. MSJ at 1. In Count One, she claims that she is entitled to back pay pursuant to the Back Pay Act, 5 U.S.C. § 5596. SAC ¶¶ 40-43. In Count Two, she claims that she is entitled to compensation for lost wages and benefits pursuant to the VRRA, 38 U.S.C. § 2021 (1992). *Id.* ¶¶ 44-48. In Counts Three and Four, she asserts claims for breach of contract and negligence, respectively. *Id*. ¶¶ 49-61. All four counts stem from "the District's failure to abide by the rules and regulations imposed under it by federal and local law when Lucas was separated from District Employment to enter military service as well as when he applied for reinstatement with the District." Pl. MSJ at 1.

The Defendant filed its Motion for Summary Judgment on August 19, 2022. Def. MSJ at 1. The Defendant relies on laches and the statute of limitations to argue that the Plaintiff's VRRA claim (Count II), and common law claims (Counts III and IV) are time-barred. *Id.* Further, Defendant argues that Count I fails due to the failure of the other counts. *Id.*

The Court will address Count II, Counts III-IV, and Count I separately. For the reasons explained below, the Defendant is entitled to summary judgment on all four counts.

**A.  Count II: Plaintiff's VRRA Claim is Barred by Laches**

While Plaintiff contends that laches does not apply to her VRRA claim and she is entitled to summary judgment on the merits, the Defendant argues that this Court need not reach the

merits of the claim because it is time-barred. The Defendant is correct. The equitable doctrine of laches applies to VRRA claims generally, and bars this one in particular.

### i.   _Laches applies to VRRA claims_

As a preliminary matter, the weight of authority and text of the statute demonstrate that this Court should apply laches to address the timeliness of the Plaintiff's VRRA claim. While no other district court in this Circuit has addressed the issue, other federal courts have uniformly found that reemployment claims under the VRRA and its predecessor statute are subject to the equitable doctrine of laches. *See e.g.*, *Leonick v. Jones & Laughlin Steel Corp.*, 258 F.2d 48, 49 (2d Cir. 1948) (laches barred veteran's cause of action for relief under the re-employment portions of the Selective Service Act ("SSA") [the predecessor to the VRRA] where he failed to assert his rights for at least ten years); *Carmalt v. Gen. Motors Acceptance Corp.*, 302 F.2d 589, 590 (3d Cir. 1962) (laches barred veteran's cause of action for relief under the SSA where he failed to assert his rights for 17 years); *Farries v. Stanadayne/Chicago Div.*, 832 F.2d 374, 381 (7th Cir. 1987) (laches barred plaintiff's VRRA claim where he waited at least six years to file a lawsuit); *Jordan v. Kenton Cty. Bd. of Educ.*, 97 F.3d 1452 (6th Cir.1996) (laches barred plaintiff's VRRA claim where he waited 11 years to bring suit); *Goodman v. McDonnel Douglas Corp.*, 606 F.2d 800, 806 (8th Cir. 1979), *cert. denied*, 446 U.S. 913 (1980) (laches barred the VRRA claims of a group of veterans who waited 5 to 9 years to file lawsuit).

Further, while the Plaintiff argues that "the statutory text of the VRRA seems to look disfavorably upon a laches defense…by explicitly prohibiting the use of a statute of limitations," *see* Def. Reply at 2, the reality is inapposite. As another court in this district noted when addressing a claim under United Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 *et. seq.* (the successor to the VRRA), "courts analyzing whether a

[reemployment] claim is time-barred" do so under the doctrine of laches "*[b]ecause* [the statute] proscribes applying a statute of limitations," not despite it. *Potts v. Howard Univ. Hosp.*, 598 F. Supp. 2d 36, 40-41 (D.D.C. 2009) (emphasis added). Consistent with this interpretation and the weight of authority in other Circuits, this Court will apply laches to address the timeliness of the Plaintiff's VRRA claims.

## ii. <u>The Elements of a Laches Defense</u>

Under D.C. Circuit precedent, "the doctrine of laches bars relief to those who delay the assertion of their claims for an unreasonable time*." N.A.A.C.P. v. N.A.A.C.P. Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 137 (D.C. Cir. 1985). For a court to find a claim is barred by laches, two elements must be present: "a (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 47 (D.C. Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002)). To establish the first element, the party asserting the defense must demonstrate that the delay was "inexcusabl[e] or unreasonabl[e]." *Id*. at 49. And for the second element, "there are two types of prejudice that can support a laches defense: trial prejudice and economic prejudice." *LTMC/Dragonfly, Inc. v. Metro. Washington Airports Auth.*, 699 F. Supp. 2d 281, 293 (D.D.C. 2010) (citing *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 844 (D.C. Cir. 1982)). Trial prejudice includes considerations like the "extent to which [Plaintiff's] delay resulted in a 'loss of evidence or witnesses supporting [Defendant's] position.'" *Pro-Football, Inc.*, 415 F.3d at 50 (quoting *Gull Airborne*, 694 F.2d at 844).

Further, the two elements of a laches defense are not independent but "intertwined." *See Goodman*, 606 F.2d at 807. As the D.C. Circuit has explained, "to determine whether [plaintiff]'s

three-year delay was unreasonable, we must also weigh the prejudice the government has suffered as a result of that delay." *Gull Airborne*, 694 F.2d at 844.

### iii.   Mr. Lucas Failed to Diligently Pursue His Claim

The Defendant has carried its burden to demonstrate that Mr. Lucas failed to diligently pursue his claim. To establish a lack of diligence, a plaintiff's delay in filing suit must be "unreasonabl[e] or inexcusabl[e]." *See Pro-Football, Inc.* 415 F.3d at 49. The undisputed material facts demonstrate that Mr. Lucas' 35-year delay in filing suit was "unreasonable or inexcusable" for at least three reasons: (1) its length is unreasonable on its face; (2) he failed to take any meaningful action when his reemployment request was denied, despite knowing that MPD's reasoning for denial was flawed; and (3) the delay resulted in prejudice to the Defendant.

First, waiting 35 years after the Defendant's alleged violation of the VRRA to file suit is not reasonable, and is a self-evident lack of diligence. *See id*. The Plaintiff alleges the Defendant violated its statutory duties under the VRRA when it failed to reinstate Mr. Lucas to his former position with the MPD upon request in 1978.[4] Pl. MSJ at 18. However, he did not bring his VRRA claim for reemployment until 2013-- 35 years after the Defendant's primary violation. While not dispositive to a laches defense, "the length of delay in filing suit stands at the core" of a court's assessment of the unreasonableness of the delay. *See Lingenfelter v. Keystone Consol. Indus., Inc.*, 691 F.2d 339, 341 (7th Cir. 1982) (holding that an 11-year delay in filing a VRRA claim was barred by laches). The Plaintiff's 35-year delay is "unusually long by any standard." *See Peshlakai v. Duncan,* 476 F.Supp. 1247, 1256 (D.D.C. 1979) (describing seven-year period of delay in bringing action under the National Environmental Policy Act when applying laches).

---

[4]      The Plaintiff also alleges the Defendant violated its statutory duties under the VRRA's predecessor when it failed to counsel Mr. Lucas on his reemployment rights when he left for the military in 1973 Pl. MSJ at 18. However, the claim still did not accrue until 1978. *See Petrella v. Metro-Goldwyn-Mayer, Inc*., 572 U.S. 663, 670 (2014) ("A claim ordinarily accrues when [a] plaintiff has a complete and present cause of action.").

Further, the length of Plaintiff's delay far exceeds those in cases where courts have applied laches to bar VRRA claims. *See, e.g.*, *Farries*, 832 F.2d at 381 (7th Cir. 1987) (delay of 6 years); *Jordan.*, 97 F.3d at 1452 (delay of 11 years); *Goodman*, 606 F.2d at (delays of 5 to 9 years). Likewise, outside the VRRA context, courts in this District have found laches to apply with far shorter delay periods than the one at issue here. *See e.g., Pro-Football, Inc. v. Harjo*, 567 F. Supp. 2d 46, 54 (D.D.C. 2008) (finding a delay of almost eight years "evidence[s] a lack of diligence"); *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 34 (D.D.C. 2021) (finding six and eight-year delays in filing antitrust claims were "unreasonable" and barred by laches); *Peshlakai,* 476 F.Supp. at 1256 (D.D.C. 1979) (describing seven-year period of delay as "unusually long by any standard" when applying laches to bar a claim). By any measure, the Plaintiff's 35-year delay was unreasonable, and evidences a lack of diligence.

Second, Mr. Lucas' failure to take any action when the MPD denied his reemployment request for clearly false reasons is unreasonable, and further shows a lack of diligence in pursuing his VRRA claim. Beginning in 1978, he was aware, or should have been aware, that the MPD's consideration of his reemployment request was flawed. After denying his request, an MPD official informed him that the denial was because "there was no record of him." Pl. SOF ¶ 41. However, Mr. Lucas *was* previously an MPD employee, so he must have known that the decision was a mistake. *Id.* ¶¶ 21-22. But instead of following up with people he previously worked with, applying for another job, or otherwise pursuing a remedy he simply "thanked them very much and left." Def. SOF. ¶¶ 25-28. That is not consistent with a diligent pursuit of his rights. Nor is the lack of diligence excused by ignorance of his rights under the VRRA. Contrary to the Plaintiff's assertions, *see* Pl. Mem. Opp. at 2-3, the district's failure to notify Mr. Lucas of his rights is no protection against laches. As other courts in this district have held, "ignorance of

one's legal rights is not a reasonable excuse in a laches case." *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 141 (D.D.C. 2003); *Pro-Football, Inc. v. Harjo*, 567 F. Supp. 2d 46, 55 (D.D.C. 2008); *see also Jones v. United States*, 6 Cl. Ct. 531, 533 (1984) (stating "[w]here laches is raised, knowledge of the law is imputed to all Plaintiffs. Consequently, professed ignorance of one's legal rights does not justify delay in filing suit.").

Finally, the Plaintiff's delay was unreasonable because it resulted in prejudice against the Defendant. While prejudice is also the second element of a laches defense, the two elements of laches are "intertwined." *See Goodman*, 606 F.2d at 807. Courts consider the prejudice suffered by the defendant when determining if a defendant's delay was unreasonable. *Gull Airborne*, 694 F.2d at 844 ("to determine whether [plaintiff]'s three-year delay was unreasonable, we must also weigh the prejudice the government has suffered as a result of that delay"). As explained below, as time has passed since the Defendant's alleged violation of the VRRA, key witnesses have died or become unable to recall the events surrounding the claim, resulting in trial prejudice. This supports a finding that the Plaintiff's delay was unreasonable, and demonstrative of a lack of diligence. *See id.*

### iv.   *Plaintiff's Delay Prejudiced the Defendant*

The Defendant has also demonstrated that the Plaintiff's delay resulted in prejudice against the Defendant, the second element of a laches defense. Because laches operates on a sliding scale where longer delays require a lesser showing of prejudice, here the Defendant need not demonstrate a substantial amount of prejudice to succeed on its laches claim considering the lengthy delay. *See Gull Airborne*, 694 F.2d at 843 ("If only a short period of time elapses between accrual of the claim and suit, the magnitude of prejudice required before suit would be barred is great; if the delay is lengthy, a lesser showing of prejudice is required.").

The Defendant has identified evidentiary issues that meet this low burden to demonstrate trial prejudice. *See LTMC/Dragonfly, Inc.*, 699 F. Supp. 2d at 293 ("there are two types of prejudice that can support a laches defense: trial prejudice and economic prejudice."). The D.C. Circuit has held that when assessing trial prejudice, the District Court "should consider the extent to which [the] delay resulted in the 'loss of evidence or witnesses supporting the [Defendant]'s position.'" *Pro-Football, Inc.*, 415 F.3d at 50 (quoting *Gull Airborne*, 694 F.2d at 844). Some courts have found trial prejudice when the delay has resulted in the erosion of key witnesses' memory. *See Lingenfelter,* 691 F.2d at 342 (finding trial prejudice in a VRRA claim where one witness admits to a "faded" memory and another's testimony conflicts with other evidence); *Farries*, 832 F.2d at 382 (noting that "the fading of key witnesses' memories during the nine-year period prior to filing suit was a proper ground for a finding of prejudice to the defendant."); *see also Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 142 (D.D.C. 2003) (describing prejudice to include "prejudice at trial due to loss of evidence or memory of witnesses" when finding laches barred plaintiff's trademark claim) (quoting *Bridgestone/Firestone Research, Inc. v. Auto. Club De L'Quest De La France*, 245 F.3d 1359, 1362 (Fed. Cir. 2001)). Specific to the VRRA context, the Seventh Circuit noted that the death (and consequent lack of testimony) of an official who denied the plaintiff's request for reinstatement was an even "more compelling factual scenario than the fading of witnesses' memories" when finding trial prejudice. *See Farries*, 832 F.2d at 382; *see also Pro-Football, Inc. v. Harjo,* 567 F. Supp. 2d 46, 57 (D.D.C. 2008), aff'd in part, 565 F.3d 880 (D.C. Cir. 2009) (finding trial prejudice, in part, where a witness' death and resulting loss of testimony was "a source of relevant evidence that has become unavailable due to the passage of time").

Here, the Defendant has demonstrated that the delay has similarly resulted in the death of key witnesses, faded memories, and the loss of relevant testimony. First, the testimony of Sergeant Christian, who instructed Mr. Lucas on how to file for reemployment with the MPD in 1978, and later spoke with him on the phone to inform him that there was no record of his employment, would be relevant at trial to show what Mr. Lucas knew about his reemployment rights at the time of his application. Def. SOF ¶¶ 20-23; Pl. SOF ¶¶ 42-45. But Mr. Christian denied requests to be involved in this litigation, and informed Defendant's counsel that he had no memory of the Plaintiff or his request for reinstatement. Def. MSJ at 16 n.12. The lack of his testimony could very well prejudice the Defendant at trial. *Farries*, 832 F.2d at 382 (noting that "the fading of key witnesses' memories during the nine-year period prior to filing suit was a proper ground for a finding of prejudice to the defendant."). Second, and more importantly, Addison Davis, the commanding officer who allegedly made the final decision denying Plaintiff's request for reinstatement, *see* Def. SOF ¶ 22, passed away in 2006 and cannot testify about his decision. *See* Def. MSJ Ex. 24, Davis Obituary. Had Mr. Lucas not waited 35 years before filing suit, these witnesses very well could have testified about his reinstatement request at trial. Here, just as in other similar VRRA cases, the passage of time has prevented key witnesses to reemployment decisions from providing their testimony. *See Farries*, 832 F.2d at 382; *see Lingenfelter,* 691 F.2d at 342. The Defendant has thus met its low burden to demonstrate that the Plaintiff's delay resulted in trial prejudice, and satisfied the second element of a laches defense. *See Gull Airborne*, 694 F.2d at 843 ("If only a short period of time elapses between accrual of the claim and suit, the magnitude of prejudice required before suit would be barred is great; if the delay is lengthy, a lesser showing of prejudice is required.")

Accordingly, the Court finds the Plaintiff's 35-year delay demonstrated both a lack of diligence and resulted in prejudice to the Defendant, satisfying both elements of laches. The Plaintiff's VRRA claim is time-barred, and the Court need not address the issue on its merits.

*v.   Defendant is not Estopped from Raising Laches Defense*

Though the Court is satisfied that the Plaintiff's VRRA claim is time-barred, one of the Plaintiff's counterarguments merits a brief discussion. The Plaintiff argues that the Defendant should be estopped from raising a laches defense because it "lulled Lucas into believing that he was denied restoration because the MPD could find no record of him." Pl. Mem. Opp. at 12-13. But this is a fundamental misunderstanding of the estoppel doctrine. Estoppel only "prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998). The Defendant's alleged failure to inform Mr. Lucas of his reemployment rights is not an affirmative attempt to prevent him from bringing his claims, but a passive mistake. And as previously discussed, "ignorance of one's legal rights is not a reasonable excuse in a laches case." *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 141 (D.D.C. 2003). Further, the Plaintiff cannot point to any caselaw where a court has estopped a defendant from raising laches. For those reasons, the doctrine of estoppel does not prevent the Defendant from successfully raising a laches defense.

**B.  Counts III and IV: Plaintiff's Common Law Claims are Barred by the Statute of Limitations**

In addition to her VRRA claim, the Plaintiff also brings two common law claims: Breach of Contract (Count III), premised on the idea that the Defendant had a contractual duty to provide Mr. Lucas with separation counseling and restore his employment under the District Personnel Manual; and Negligence (Count IV), premised on the theory that the Defendant had a

duty to keep appropriate records of Mr. Lucas' employment and properly calculate his retirement benefits. *See* SAC at 11-12.

However, like the VRRA claim, the Court need not address either on its merits as both claims are time-barred. As explained below, the District of Columbia's three-year statute of limitations expired long prior to Mr. Lucas filing suit.

### i. *Legal Standard for Tolling of Statute of Limitations*

As this Court noted in a previous decision from this case, "[t]he plaintiff's contract and negligence claims are governed by the District of Columbia's three-year statute of limitations." *Lucas v. District of Columbia*, No. 13-cv-143 (TFH), 2019 WL 4860730, at *7 (D.D.C. Oct. 2, 2019); D.C. Code §§ 12-301(7)-(8).

Generally, "a cause of action accrues for the purposes of the statute of limitations at the time the injury actually occurs." *Abate v. District of Columbia*, 659 F. Supp. 2d 156, 159 (D.D.C. 2009). However, "[w]here an injury is by its nature not readily apparent, D.C. courts apply a more forgiving 'discovery rule' under which a claim accrues only if a Plaintiff has actual or inquiry notice of a cause of action, regardless of when the injury occurred." *Momenian v. Davidson*, 878 F.3d 381, 388 (D.C. Cir. 2017). Both parties, as well as this Court, agree that the discovery rule is applicable here. *See* Def. MSJ at 21; Pl. Mem. Opp. at 16-17; *Lucas*, 2019 WL 4860730, at *8. As this Court previously found:

> Under this test, the Plaintiff's claims are untimely if he knew or with reasonable diligence should have known before February 4, 2010—three years before he filed his complaint—that his retirement benefits had been reduced, that there was some evidence of breach of contract and/or negligence on the part of the District of Columbia, and that there was a causal relationship between that wrongdoing and his injury.

*Lucas*, 2019 WL 4860730, at *8.

In other words, a cause of action accrues under the discovery rule when the plaintiff "knew or should have known through the exercise of reasonable diligence of: (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Momenian*, 878 F.3d at 388 (internal quotations omitted).

>    ii.   *Plaintiff's Common Law Claims are Time-Barred Under the Discovery Rule*

The undisputed facts demonstrate that Mr. Lucas knew or should have known of his injury, its cause, and some evidence of Defendant's wrongdoing long before February 10, 2010. First, he had knowledge of his fundamental injury—the denial of his reemployment request— when it happened in 1978. Second, the MPD informed him that they declined his request because it had no record of his employment, the cause of the injury. Third, he knew or should have known that the MPD's recordkeeping was flawed, some evidence of wrongdoing. Applying the discovery rule, Mr. Lucas' claims accrued in 1978, and have long been time-barred by the statute of limitations. Even if this Court considered the Plaintiff's injury to be Mr. Lucas' inclusion in the municipal retirement system instead of the CSRS, these common law claims accrued at the absolute latest by 1994, and are still time-barred.

First, for both the contract and negligence claims, Mr. Lucas knew about the injuries in 1978, when the MPD denied his reemployment request. This is not genuinely in dispute. The breach of contract claim centers on the Defendant's failure to inform Mr. Lucas of his reemployment rights upon his departure in 1973 and its failure to restore his employment when he was discharged in 1978. *See* Pl. MSJ at 21. And as the Plaintiff states in her Motion for Summary Judgment, the Defendant's negligence "resulted in the District's denial of Lucas' application for reinstatement…ultimately leading to a drastic reduction of his retirement annuity…and a lower rank, grade, and pay than he was entitled to." *Id.* at 27. On both counts, the

cognizable injury for which Plaintiff seeks relief is the denial of Mr. Lucas' reemployment request in 1978. All the harms that the Plaintiff alleges stem from this denial: had his employment been reinstated, he would have been given credit for his five years of military service in his retirement, stayed in the 20-year federal retirement plan rather than being placed in the municipal plan, received higher wages, and not have to go through additional probationary periods. *See* SAC ¶ 39. Mr. Lucas had actual notice of this injury in 1978, when the MPD denied his reemployment request "both verbally and by written communication." Pl. SOF ¶ 40.

Second, Mr. Lucas was also aware of the "cause in fact" of his injury in 1978. *See Momenian*, 878 F.3d at 388. When the MPD rejected his reinstatement request (the injury), it informed him that it did so "because the District could not find record of his initial employment with the MPD." Pl. SOF ¶ 41. However, Mr. Lucas *was* employed by MPD as a cadet in 1972, so it must not have been his lack of previous employment with the MPD that caused the denial, but the MPD's failure to keep accurate employment records. Because Mr. Lucas knew the MPD had actually employed him, he had actual notice of the cause of his injury. Further, the cause itself is not genuinely in dispute: the Plaintiff states in her Motion for Summary Judgment that the Defendant's "failure [to maintain Lucas' employment records] resulted in the [Defendant]'s denial of Lucas's application for reinstatement…" Pl. MSJ at 27.

Third, the MPD's reasons for denying Mr. Lucas' reinstatement also gave him "some evidence" of the Defendant's wrongdoing in 1978, satisfying the final part of the discovery rule. *See Momenian*, 878 F.3d at 388. As described above, the Defendant denied Mr. Lucas' reemployment request because it lacked record of his employment, despite his actual employment with the MPD. Pl. SOF ¶ 41. Logically, he then had actual notice that Defendant failed to maintain his employment records, "some evidence" of wrongdoing in and of itself.

Further, "failing to adequately maintain Lucas' records," forms the basis of part of the Plaintiff's breach of contract claim, *see* Pl. MSF at 21, and the entirety of her negligence claim, *see* Pl. MSF at 27. Both claims thus accrued in 1978. *See Buissineau v. President and Dirs. of Georgetown Coll.,* 518 A.2d 423, 427 (D.C. 1986) (commenting that a "prospective plaintiff's negligence cause of action did not accrue until the individual knew or should have known that she had been injured by the alleged negligence [i.e., wrongdoing] of the defendant.") (internal quotation marks omitted).

Even if Mr. Lucas did not have actual notice of the wrongdoing and its causal connection to his injury, the Defendant's questionable reasoning for denying his reemployment request certainly put him on inquiry notice of his cause of action, causing it to accrue. *See Doe v. Medlantic Health Care Group, Inc.*, 814 A.2d 939, 945 (D.C. 2003) (explaining "that a cause of action accrues for statute of limitations purposes when the plaintiff is deemed to be on inquiry notice, 'because if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs, such an investigation, if conducted, would have led to actual notice.'") (quoting *Diamond v. Davis*, 680 A.2d 364, 372 (D.C.1996)). After being informed that the MPD had no record of his employment, a reasonably diligent person would have investigated this clearly flawed reasoning, and discovered that the Defendant failed to keep an accurate record of his employment. However, Mr. Lucas did not investigate the MPD's reasoning for denial. Instead, he "thanked [MPD] very much and left." *See* Ex. 3, Dep. I of Pl. at 36:3-13. Thus, in 1978, Mr. Lucas had actual notice of his injury (MPD's denial of reinstatement), actual or inquiry notice of its cause in fact (MPD's lack of record of his employment), and actual or inquiry notice of some wrongdoing (failure to adequately maintain his employment records). *See Momenian*, 878 F.3d at 388.

Further, even if the Plaintiff characterizes the injuries here solely as her husband's reduced retirement benefits under the municipal system, she fares no better. The discovery rule still caused these claims to accrue well before 2010. Mr. Lucas had actual or inquiry notice of this injury at numerous points in the past 40 years. In approximately 1983, Mr. Lucas "was shock[ed] to learn that he 'had not been put under the previous straight 20 years civil service retirement [the federal CSRS] but…was now in the 25-year minimum requirement [the municipal retirement]." Pl. MSJ at 23; Pl. Ex. 3, Dep. I of Pl. at 54:9-15. If that wasn't enough, Mr. Lucas acknowledged in a deposition that he took a job at the Department of Corrections in 1993 with the express purpose of moving into the CSRS from the municipal system. Pl. Ex. 3, Dep. I of Pl. at 176:22-177:22. Further still, in 1994, in response to Mr. Lucas' inquiry about his retirement benefits, OPM sent him a form describing his only times of creditable federal service as in 1972-1973 with the MPD and a brief period in 1978 with the National Gallery of Art. Def. SOF at ¶ 50. No reasonable jury could find that Mr. Lucas lacked inquiry notice of his injury by 1994, so this is not genuinely in dispute. *See Anderson*, 477 U.S. at 248.

Second, Mr. Lucas was aware of the cause of this injury. An MPD employee explained to him in 1983 that he was not eligible for the superior federal retirement benefits because he returned to the MPD after eligibility for the CSRS ended for municipal employees in 1980. Def. SOF ¶ 42.

Third, as explained above, Mr. Lucas knew or should have known that Defendant's wrongdoing prevented him from returning to the MPD prior to 1980 when it denied his reinstatement request in 1978. Again, even under this very generous application of the discovery rule, Mr. Lucas' claims accrued by 1994, when he knew or should have known about his injury, its cause, and some wrongdoing by the Defendant. *See Momenian*, 878 F.3d at 388.

22

Regardless of how the Plaintiff characterizes the injuries, these common law claims accrued well before February 10, 2010, and are therefore untimely. *See Lucas*, 2019 WL 4860730, at *8. The Defendant is entitled to summary judgment on Counts III and IV.

> iii. *Neither Estoppel nor Equitable Tolling Rescue Plaintiff's Common Law Claims*

This Court will also briefly address the Plaintiff's arguments that the doctrines of estoppel and equitable tolling prevent the expiry of the statute of limitations for the two common law claims. As explained below, the Plaintiff is incorrect on both counts, and the breach of contract and negligence claims are time barred.

First, the Plaintiff argues that the Defendant "should be estopped from raising the statute of limitations defense due to its dilatory conduct and/or its total failure to respond with respect to Lucas' grievances." Pl. Mot. Opp. at 13. However, like Plaintiff's argument that the Court should estop the Defendant from raising a laches defense, this reveals a fundamental misunderstanding of the estoppel doctrine. Estoppel only "prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time." *Currier*, 159 F.3d at 1367. While the Defendant undoubtedly failed to restore Mr. Lucas' employment, losing or otherwise mistaking his employment records was a passive, rather than an "active step[]" to prevent him from pursuing his claims. Pl. SOF ¶ 41; *see Currier*, 159 F.3d at 1367. And as discussed above, Mr. Lucas' claims accrued at the absolute latest in 1994, so the Defendant's conduct in the 2000s, whether "purposeful misleading behavior" or not, has no bearing on the tolling of the statute of limitations. *See* Pl. Mem. Opp. at 15.

Second, for similar reasons, the Plaintiff's argument that the Court should employ equitable tolling to prevent toll the statute of limitations in 2007 is unavailing. The Plaintiff argues "equitable tolling should operate…to toll the statute of limitations during the period

which Lucas pursued his administrative remedies, which began….on March 7, 2007, and ended, at the earliest on October 9, 2012…" Pl. Mem. Opp. at 23. But again, Mr. Lucas' common law claims accrued long before 2007, so applying equitable tolling due to Defendant's conduct in the 2000s does nothing to prevent the statute of limitations from barring the claims.

### C.  Count I: Plaintiff's Back Pay Act Claim Fails with Counts II-IV

The Plaintiff seeks compensation and attorney's fees pursuant to the Back Pay Act, 5 U.S.C. § 5596, alleging that Mr. Lucas "was the recipient of unjustified and unwarranted personnel actions, which have resulted in the withdrawal and reduction of his pay, allowances and benefits." SAC ¶ 41.

The Back Pay Act provides that "a federal employee is entitled to back pay if he or she 'is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of [his] pay, allowances, or differentials.'" *Brown v. Sec'y of Army*, 918 F.2d 214, 216 (D.C. Cir. 1990) (quoting 5 U.S.C. § 5596(b)(1)). The Back Pay Act is "an auxiliary measure that operates only at the relief stage." *Brown*, 918 F.2d at 217.

While the Plaintiff does not allege that an "appropriate authority" has found Mr. Lucas to have been affected by an unjustified or unwarranted personnel action, this Court has previously found that it "constitutes an 'appropriate authority' under the Back Pay Act, and could potentially make a finding as to whether the plaintiff suffered an unwarranted or unjustified personnel action." *Lucas*, 2019 WL 4860730, at *5; 5 C.F.R. § 550.803. However, as described above in its analysis of Counts II-IV, this Court has not found that Mr. Lucas suffered "an

unwarranted or unjustified personnel action." The Defendant is therefore awarded summary judgment on Count I.

## VI.    CONCLUSION

For the forgoing reasons, the Court shall grant Defendant's Motion for Summary Judgment, and deny Plaintiff's Partial Motion for Summary Judgment. An appropriate Order accompanies this Opinion.

February 17, 2023

Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE